1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11

12   PATRICIA E. FLYNN,              No. 2:19-cv-00116 WBS KJN

13              Plaintiff,

14        v.                         MEMORANDUM AND ORDER RE:
                                     MOTION TO DISMISS
15   WELLS FARGO BANK, N.A. and DOES
     1-50, inclusive,

16
                Defendant.
17

18                           ----oo0oo----

19        Plaintiff Patricia E. Flynn asserts state statutory and

20   common law claims against defendants Wells Fargo Bank, N.A.

21   ("Wells Fargo"), Timothy Sloan, Anthony Bennum, and Evelia

22   Garcia.[1]  Plaintiff's claims arise out of Wells Fargo's alleged

23   mishandling of her loan modification application and alleged

24   wrongful foreclosure on her home.  Presently before the court is

25   defendants' Motion to Dismiss Plaintiff's First Amended Complaint

26

27        _____

          [1]  Plaintiff's initial complaint was against Wells Fargo
28   and Does defendants; Sloan, Bennum, and Garcia were joined by her
     First Amended Complaint.

                                    1

1  ("FAC").  (Docket No. 14.)

2  I.   <u>Factual and Procedural Background</u>

3          In January 2006, plaintiff entered into a consumer loan

4  transaction with defendant Wells Fargo to refinance her home, a

5  single-family residency located at 2540 6th Avenue in Sacramento,

6  California ("the subject property").  (FAC ¶ 14.)  Shortly

7  thereafter, Wells Fargo took a security interest in the subject

8  property; it also recorded a deed of trust with the Sacramento

9  County's Recorder's Office.  (<u>Id.</u>)

10          In May 2016, plaintiff submitted a request for a loan

11  modification to Wells Fargo.  (<u>Id.</u> ¶ 16.)  She had experienced a

12  "material change in financial circumstances" and wanted to secure

13  a lower interest rate.  (<u>Id.</u>)  Plaintiff then received two

14  letters from defendant, both dated July 19, 2016. (<u>Id.</u> ¶ 18.)

15  One letter denied plaintiff's modification application on the

16  grounds that Wells Fargo did not have the contractual authority

17  to modify plaintiff's loan.  (<u>Id.</u>)  The second letter

18  acknowledged receipt of plaintiff's application and advised her

19  that she may need to submit additional documents.  (<u>Id.</u>)

20          Plaintiff alleges that in the months that followed, she

21  received multiple solicitations from Wells Fargo for home loan

22  modifications. (<u>Id.</u> ¶ 16.)  Under California's Homeowner Bill of

23  Rights, Wells Fargo was required to provide plaintiff a "single

24  point of contact" who could assist her in the loan modification

25  process.  Plaintiff alleges that throughout the period at issue

26  in the complaint, she was subjected to a "revolving door" of

27  single points of contact and that Wells Fargo changed her single

28  point of contact as many as four times in a single month.  (<u>Id.</u>

¶¶ 21, 86.)  She alleges that the frequency with which Wells

Fargo changed her designated single point of contact negatively

impacted her ability to navigate the loan modification process.

(Id.)

Plaintiff alleges that she had previously applied for

loan principal reduction assistance from Keep Your Home

California, a state-sponsored mortgage-assistance program.  She

further alleges that on November 29, 2016, she received a notice

that her conditional eligibility for that principal reduction

assistance from Keep Your Home California was in jeopardy because

the program had not received a complete response from plaintiff's

mortgage servicer, Wells Fargo.  (Id. ¶ 23.)

On December 1, 2016, plaintiff received a letter from

Wells Fargo listing documents necessary for to complete her loan

modification application.  (Id. ¶ 24.)

On December 19, 2016, Vanessa Rivera, then plaintiff's

single point of contact with Wells Fargo, "told [p]laintiff

during a telephone call that once she sent the requested

documents, which include the profit and loss statement for her

husband, [p]laintiff's loan application would be complete and

would be submitted for review."  (Id. ¶ 25.)  Plaintiff alleges

that later that very same day, December 19, 2016, she sent

defendant Wells Fargo all of the documents requested in its

December 1, 2016, letter.  (Id. ¶ 26.)

On December 20, 2016, plaintiff alleges, Vanessa

Riviera confirmed receipt of documents from plaintiff.  (Id. ¶

27.)

On December 21, 2016, plaintiff alleges, Wells Fargo

employee Grace Yang told Christine Tinsley at the organization Keep Your Home California that plaintiff's loan modification application was still incomplete. (Id. ¶ 28.)  Plaintiff also alleges that on February 2, 2017, Grace Yang again falsely told Keep Your Home California that plaintiff had not provided documents requested of her.  (Id. ¶ 32.)

On January 25, 2017, plaintiff received a letter from Wells Fargo stating that they had not received all of the required documentation from plaintiff and were unable to offer her assistance.  (Id. ¶ 30; see FAC, Ex. I (Docket No. 9-9).)  Plaintiff complained in writing to Wells Fargo about the way her loan modification application was being handled on February 7, 2017.  (Id. ¶ 33.)  On February 20, 2017, Wells Fargo employee Angie Olson responded to that complaint and explained that plaintiff's eligibility for Keep Your Home California funds had not been evaluated because Wells Fargo had not received necessary documents from plaintiff. (Id. ¶ 34.)

In the months that followed, plaintiff alleges, she invested substantial time in responding to "redundant and duplicative" requests for documents from defendant Wells Fargo. (Id. ¶ 35.)

Plaintiff alleges that on March 30, 2017, defendant Wells Fargo recorded a Notice of Default against the subject property. (Id. ¶ 36.)  Plaintiff alleges that at the time it recorded the Notice of Default, Wells Fargo had in its possession a complete loan modification application which it had not reviewed.  (Id.)  Plaintiff alleges that the Notice of Default was accompanied by a "declaration of compliance" signed by

defendant Evelia Garcia, Vice President of Loan Documentation for Wells Fargo.  (Id. ¶¶ 36, 37.)  Plaintiff alleges that the declaration of compliance was false because it stated that Wells Fargo had been unable to reach plaintiff when, in fact, plaintiff was in routine contact with Wells Fargo.  (Id. ¶ 37.)

On April 25, 2017, plaintiff attended Wells Fargo's annual shareholder meeting as the guest of an industry watchdog group.  (Id. ¶ 39.)  At the meeting, plaintiff tearfully explained her negative experiences with the loan modification process.  (Id.)  Defendant Timothy Sloan, Wells Fargo's CEO, looked at plaintiff, apologized for what she went through, and promised to "personally look into" her loan.  (Id.)  Sloan then directed plaintiff to go into the foyer and speak to defendant Anthony Bennum, a Wells Fargo representative.  (Id. ¶ 40.)  She did so and Anthony Bennum told her that he would be her new single point of contact and would "help" her.  (Id. ¶ 41.)

Plaintiff alleges that on approximately July 5, 2017, Anthony Bennum informed plaintiff that Wells Fargo had her loan modification proposal and was in the process of submitting it to Keep Your Home California.  (Id. ¶ 46.)  On July 14, 2017, Wells Fargo employee Grace Yang emailed plaintiff's loan modification proposal to Keep Your Home California.  (Id. ¶ 47.)  On July 20, 2017, however, Grace Yang acknowledged to Keep Your Home California that the wrong debt to income ratio had been used on plaintiff's file.  (Id. ¶ 49.)

On August 17, 2017, Wells Fargo informed plaintiff that her loan modification had been denied because the property had already received the maximum number of modifications allowed.

1   (Id. ¶ 53.)  That same day, plaintiff spoke with Bennum and he

2   told her that not only was Wells Fargo denying her request for a

3   loan modification, but Keep Your Home California was denying her

4   request for assistance as well.  (Id.)  However, plaintiff

5   contacted Keep Your Home California representative Michelle

6   McCarthy via email that very same day, August 17, 2017, and

7   McCarthy told plaintiff that her request for assistance from Keep

8   Your Home California had not yet been denied.  (Id. ¶ 54.)

9        On October 6, 2017, plaintiff received a letter from

10  Wells Fargo stating that her loan was in default and that Wells

11  Fargo wanted to pursue foreclosure alternatives.  (Id. ¶ 55.)

12       On November 7, 2017, Wells Fargo recorded a Notice of

13  Trustee's Sale against the subject property.  (Id. ¶ 56.)  The

14  sale took place on December 1, 2017.  (Id. ¶ 57.)  On December

15  12, 2017, plaintiff received the trustee's deed upon sale that

16  was recorded against the subject property and was served with a

17  3-Day Notice to Quit.  (Id. ¶ 58.)

18       In November 2018, plaintiff filed this action in the

19  Superior Court, State of California, County of Sacramento.  (See

20  Docket No. 1-1.)  That complaint was brought against defendant

21  Wells Fargo and Does 1-5. Defendant Wells Fargo removed the case

22  to this court on January 17, 2019 (Docket No. 1), and thereafter,

23  on March 18, 2019, plaintiff filed her First Amended Complaint.

24  The First Amended Complaint alleges claims against Wells Fargo

25  and against the newly-joined defendants Evelia Garcia, Anthony

26  Bennum, and Timothy Sloan.  Sloan is the CEO of Wells Fargo and a

27  California resident.

28

II.  Legal Standard

On a motion under Federal Rule of Civil Procedure Rule 12(b)(6), the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

III. Discussion

A.   Claims Against Timothy Sloan

The fifth, sixth, and ninth claims in the First Amended Complaint are brought against defendant Timothy Sloan, the CEO of Wells Fargo.  Sloan was not named as a defendant in plaintiff's initial complaint.  Rather, he was joined by the First Amended Complaint, which plaintiff filed following the removal of this case from state court.  In its Motion to Dismiss, defendant ask the court to dismiss all claims against Sloan on the grounds that he was improperly and/or fraudulently joined.  (Mot. to Dismiss at 21-23.)

Because Sloan's joinder destroyed complete diversity in this case, it is within this court's discretion to permit or deny it.  See Hardin v. Wal-Mart Stores, Inc., 813 F. Supp. 2d 1167, 1173 (E.D. Cal. 2011) ("Plaintiffs may not circumvent 28 U.S.C.

1447(e) by relying on Fed. R. Civ. P. 15(a) to join non-diverse

parties."); <u>Dooley v. Grancare, LLC</u>, No. 15-cv-3038 SBA, 2015 WL

6746447, *2 (N.D. Cal. Nov. 5, 2015) ("[F]ederal courts have

concluded that when an amendment would deprive the court of

subject matter jurisdiction, a party may not rely on Rule 15(a)

to amend a pleading without leave of court; such an amendment

must instead be analyzed pursuant to § 1447(e)."). <u>But see</u>

<u>Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.</u>,

186 F.R.D. 581, 583 (N.D. Cal. 1999) (allowing joinder of non-

diverse defendant who would defeat court's diversity jurisdiction

under Rule 15).

In evaluating whether Sloan's joinder is proper under

1447(e), the court must consider:

> (1) whether the party sought to be joined is
> needed for just adjudication and would be joined
> under Federal Rule of Civil Procedure 19(a); (2)
> whether the statute of limitations would preclude
> an original action against the new defendants in
> state court; (3) whether there has been
> unexplained delay in requesting joinder; (4)
> whether joinder is intended solely to defeat
> federal jurisdiction; (5) whether the claims
> against the new defendant appear valid; and (6)
> whether denial of joinder will prejudice the
> plaintiff.

<u>IBC Aviation Servs. v. Compañia Mexicana de Aviacion, S.A. de</u>

<u>C.V.</u>, 125 F.Supp.2d 1008, 1011 (N.D.Cal. 2000).

On balance, these factors weigh against permitting

Sloan's joinder. With respect to the first factor, Sloan is a

marginal player in the First Amended Complaint. All of

plaintiff's claims against Sloan are based on representations he

made to her at two annual Wells Fargo shareholders' meetings and,

based on the allegations in the complaint, each of these

interactions appears to have occurred over the course of a few minutes, at most. (See FAC ¶¶ 39, 59.) In contrast, plaintiff's interactions with other Wells Fargo employees are alleged to have been so time consuming that they were effectively a "fulltime job" at some points during plaintiff's loan modification application process. (Id. ¶ 35.) In short, Sloan appears to be only "tangentially related" to plaintiff's cause of action. IBC Aviation, 125 F.Supp.2d at 1012.

The second factor similarly weighs against permitting joinder. Plaintiff concedes that the relevant statute of limitations would not prevent her from bringing a cause of action against Sloan in state court. (Pl.'s Opp'n to Mot. to Dismiss at 24 (Docket No. 16).)

With respect to the third factor, though the delay in joining Sloan was minimal -- there were approximately four months between the filing of the Complaint and the filing of the First Amended Complaint -- that does not mean it was justified. The only allegation concerning Sloan in the First Amended Complaint that postdates the complaint is that on March 12, 2019, Sloan testified before Congress and, allegedly, promised to "do one thing when he had no intention of doing so." (FAC ¶ 15).[2] None of plaintiff's legal claims concern Sloan's congressional testimony, and thus the fact that he had not testified at the

_____

[2] The court infers that Sloan's testimony may partially explain his joinder based on the allegations in the First Amended Complaint. The court has not considered facts raised for the first time in plaintiff's opposition papers in evaluating defendants' Motion to Dismiss. See Broam v. Bogan, 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003)(citations omitted)("[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")

time she first filed her complaint is not a sufficient explanation for the delay in joining Sloan.  Given this, the third factor weighs against permitting joinder.  Moreover, the absence of any substantive legal reason for the delay tends to show that Sloan's joinder may have been substantially motivated by the desire to defeat diversity.  The fourth factor thus also weighs against permitting joinder.

The claims against defendant Sloan appear likely to suffer from the same fatal deficiencies plaguing plaintiff's claims against defendant Bennum and, as such, the fifth factor also weighs against permitting joinder.  While the sixth factor, prejudice to plaintiff, does weigh in favor of permitting joinder, it is greatly outweighed by the preceding five factors, all of which militate against permitting joinder.  For these reasons, the court denies plaintiff permission to join defendant Sloan.  The court will therefore grant defendant's motion to dismiss plaintiff's fifth, sixth, and ninth claims against Timothy Sloan.  This dismissal is without prejudice to plaintiff refiling these claims against Sloan in state court.

B.   Homeowner Bill of Rights Violations

Plaintiff's first three claims concern alleged violations of the Homeowner Bill of Rights.

Enacted in 2013, California's Homeowner Bill of Rights was intended to "ensure that homeowners who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, such as loan modifications or other alternatives to foreclosure."  Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 993 (N.D.

Cal. 2014).  The law provides a private right of action and allows for injunctive relief and damages.  <u>See</u> Cal. Civ. Code § 2924.12(a)(1), (b).

### 1.  Dual Tracking Claim

The version of California Civil Code Section 2923.6 in effect at the time at issue in the complaint prohibited "dual tracking," in which a lender proceeds with the foreclosure process while reviewing a loan modification application.  "If a borrower submits a <u>complete</u> application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer . . . shall not record a notice of default, or conduct a trustee's sale, while the complete first lien loan modification application is pending."  Cal. Civ. Code § 2923.6(c) (section operative until Jan. 1, 2018)(emphasis added).  An application is "complete" when a borrower has "supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer."  Cal. Civ. Code § 2923.6(h) (section operative until Jan. 1, 2018).[3]

Plaintiff alleges that defendant Wells Fargo violated Section 2923.6 by causing a notice of default to be recorded on the subject property while she had a complete loan modification

---

[3]  The other statutory violations plaintiff alleges in her first claim are based on the same conduct as her Section 2923.6 claim.  California Civil Code Section 2923.55 prohibited a mortgage servicer from recording a notice of default until various conditions had been met, among them compliance with Section 2923.6.  Cal. Civ. Code § 2923.55 (effective January 1, 2014 to December 31, 2017).  Section 2924.18(a)(1) also prohibited the recording of a Notice of Default when a borrower had a complete loan modification application pending with his or her mortgage servicer. Cal. Civ. Code § 2924.18 (effective January 1, 2013 to December 31, 2017).

application pending.  (FAC ¶ 72.)  Specifically, plaintiff
alleges that her loan modification application was complete as of
December 20, 2016 (FAC ¶ 73) and that on March 30, 2017, while
the application was still pending, Wells Fargo commenced
foreclosure proceedings and caused a Notice of Default to be
recorded on the subject property.  (FAC ¶ 74.)  Defendants
dispute the allegation that Wells Fargo violated Section 2323.6
by failing to consider plaintiff's complete loan modification
application before initiating foreclosure action.  They argue
that the First Amended Complaint explicitly "concedes" that Wells
Fargo notified plaintiff on February 20, 2017 that her loan
modification application was denied.  (Mot. to Dismiss at 7.)

     This argument, however, mischaracterizes the
complaint's allegation that Wells Fargo contacted plaintiff on
February 20, 2017, to tell her that her application was "removed
from review" for incompleteness.  If plaintiff's loan
modification application was, in fact, complete at that time,
then plaintiff was entitled to receive a written determination
regarding that application.  Thus, the viability of plaintiff's
first claim hinges on two factual inquiries: whether her
application was ever completed and, in the event that it was,
whether or not any of the written communications Wells Fargo sent
between December 20, 2016 and March 30, 2017, constitute a
"written determination that the borrower is not eligible for a
first lien loan modification."  See Cal. Civ. Code § 2923.6(c).

     With respect to whether plaintiff's loan modification
application was ever complete, plaintiff alleges that on December
1, 2016, she received a letter from defendant enumerating all of

12

the documents required to complete her application, including

*inter alia*, a profit and loss statement for plaintiff's husband.

(FAC ¶ 24.)  Plaintiff alleges that on December 19, 2016, she

faxed the requested documents, including the requested profit and

loss statement, to defendant.  (Id. ¶ 26.)  Exhibit G to the

First Amended Complaint contains this alleged transmission, and

it includes a letter signed by plaintiff's husband Geoffrey Flynn

listing "our profit and loss" between January 1, 2016, and

December 16, 2016."  (FAC Ex. G at 9/11.)  Plaintiff alleges that

Wells Fargo acknowledged receipt of her submission the next day,

December 20, 2016.  (Id. ¶ 27.)  Regardless, plaintiff alleges,

on February 2, 2017, Wells Fargo employee Grace Yang send a

letter to Keep Your Home California stating that plaintiff's

application was still incomplete because plaintiff had not

submitted a number of requested items; in this letter, plaintiff

alleges, Yang enumerated a different list of necessary documents

than that which had been provided to plaintiff on December 1,

2016.  (Id. ¶ 32.)

        In arguing that plaintiff's loan modification

application was not complete as of March 30, 2017, defendant

Wells Fargo disputes that plaintiff ever provided it with a

profit and loss statement for her husband, Geoffrey Flynn.

(Reply in Supp. of Def.'s Mot. to Dismiss at 4.)  It points to

the fact that on January 25, 2017, it informed plaintiff that as

a result of her failure to provide necessary documentation, Wells

Fargo was "unable to offer [plaintiff] assistance options."  (See

FAC Ex. I (Docket No. 9-9).)

        Plaintiff's complaint also alleges she did not receive

13

a written determination regarding her allegedly complete loan

modification application. (FAC ¶ 74.) Defendant, in contrast,

characterizes both its January 25, 2017, letter to plaintiff,

which informed her that her application was incomplete and

therefore not processable, and its February 20, 2017, letter to

plaintiff, as "denials" of her loan modification application.

(Reply in Supp. of Mot. to Dismiss at 4.)

The dispute regarding the "completeness" of plaintiff's

loan modification application is, in part, purely evidentiary:

did plaintiff send her husband's profit and loss statement or

not? Did defendant receive it? Also in contest, however, are

the parties' competing interpretations of the relevant evidence,

i.e. whether plaintiff's December 19, 2016 transmission

"completed" her loan modification application. Similarly, the

issue of whether or not either of defendant's January 25, 2017 or

February 20, 2017 letters to plaintiff were a "written

determination" that plaintiff was not eligible for a first lien

loan modification is grounded in the parties' divergent

understandings of the import of defendant's letters. Like the

issue of the modification application's completeness, this is a

mixed question of law and fact that is not appropriately resolved

at the motion to dismiss stage. Accordingly, the court will deny

defendant's Motion to Dismiss with respect to Sections 2923.55,

2923.6 and 2924.17.[4]

---

[4] The First Amended Complaint also alleges that defendant
Wells Fargo violated Section 2923.5 of the California Homeowner
Bill of Rights. Section 2923.5 applies only to depository
institutions that, during the immediately preceding annual
reporting period "foreclosed on 175 or fewer residential real
properties, containing no more than four dwelling units, that are
located in California." Cal. Civ. Code § 2924.18. Plaintiff has

14

1          2.  <u>Single Point of Contact</u>

2              Plaintiff next alleges that defendant violated Section

3      2923.7 by failing to provide her an adequate "single point of

4      contact" during the loan modification process.

5              Pursuant to California Civil Code Section 2923.7, if a

6      borrower requests a single point of contact, the mortgage

7      servicer must provide a person or team of personnel who can

8      "timely, accurately, and adequately inform the borrower of the

9      current status of the foreclosure prevention alternative."  Cal.

10     Civ. Code § 2923.7.  If the single point of contact is a team,

11     the mortgage servicer must "ensure that each member of the team

12     is knowledgeable about the borrower's situation and current

13     status in the alternatives to foreclosure process."  <u>Id.</u>

14     Furthermore, Section 2923.7 requires that a borrower's single

15     point of contact remain assigned to the borrower's account until

16     the account becomes current, or all loss mitigation efforts are

17     totally exhausted.  <u>Id.</u>

18             Defendants argue that since plaintiff did not

19     explicitly request a single point of contact, Wells Fargo was not

20     required to provide her with one and "the fact that Wells Fargo

21     voluntarily made the decision to provide [p]laintiff with a

22     [single point of contact] does not create a legal obligation

23     regarding that single point of contact."  (Mot. to Dismiss at 9.)

24     Defendant is correct that a mortgage servicer's obligation to

25     ─────────────────────────────────────────────────

26     not alleged that Wells Fargo is such an institution.  Moreover,
       plaintiff's complaint contains no facts tending to show that
27     Wells Fargo is a "small servicer" subject to California Civil
       Code § 2923.5.  As such, the complaint's claim that defendant
28     violated California Civil Code Section 2923.5 is not plausible
       and, accordingly, will be dismissed.

provide a borrower with a single point of contact is not "triggered" until the borrower explicitly requests a single point of contact.  See Jerviss v. Select Portfolio Servicing, Inc., No. 2:15-CV-01904 MCE KJN, 2015 WL 7572130, at *6 (E.D. Cal. Nov. 25, 2015)(dismissing Section 2923.7 claim where plaintiffs failed to allege that they affirmatively requested a single point of contact).  However, defendants are misguided in arguing that only those single points of contact assigned in response to a borrower's explicit request are subject to the requirements of Section 2923.7.

In an unpublished memorandum decision, Travis v. Nationstar Mortgage, LLC, 733 F. App'x 371 (9th Cir. 2018), the Ninth Circuit explained that once a mortgage servicer assigns a borrower a single point of contact, that contact is "subject to the remaining mandates of section 2923.7(b)-(e)" and that "nothing in the statute indicates that further requests for service are required."  Id. at 375.  Holding otherwise, the Ninth Circuit explained, "would require borrowers to engage in an absurd endeavor -- requesting a single point of contact already assigned -- to ensure that their contact is required to follow the mandates of HBOR."  Id.  Though this court is not bound by Travis, it finds the Ninth Circuit's reasoning compelling and will adopt it here: regardless of whether plaintiff requested a single point of contact, defendant provided her with at least fourteen of them (FAC ¶ 86) and, in doing so, assumed the obligation to comply with the mandates of section 2923.7(b)-(e).

Defendant next argues that the court should dismiss plaintiff's second claim because she alleges merely that her

16

single point of contact was a team of personnel, as opposed to an individual and that the statute explicitly allows for teams of personnel to serve as a single point of contact.

This argument misstates the nature of plaintiff's allegations regarding defendant's alleged violations of Section 2923(c). The First Amended Complaint does not allege that defendant improperly assigned plaintiff a team of personnel to serve as her single point of contact. Rather, it alleges that the frequency and volume with which she was (re)assigned new single points of contact was such that there was, in effect, no single, exclusive, point of contact. (See FAC ¶ 21.) Specifically, plaintiff alleges that Wells Fargo "shuffled" the single point of contact responsible for communicating with her up to four times in a single month" (FAC ¶ 86) and that her single point of contact changed at least 14 times in 11 months. Id.

Moreover, the First Amended Complaint does not merely allege that plaintiff's single point of contact was replaced. It alleges that the frequency with which plaintiff's single point of contact changed was such that she was denied an adequate single point of contact, i.e., a dedicated individual or team who was knowledgeable about her application and could accurately and timely provide her updates regarding documentation and other aspects of the modification process. See Hixson v. Wells Fargo Bank NA, No. C 14-285 SI, 2014 WL 3870004, at *6 (N.D. Cal. Aug.6, 2014) (denying defendant's motion to dismiss where the operative complaint alleged "that none of plaintiff's multiple single points of contact were able to perform the responsibilities of a single point of contact and were not

knowledgeable about plaintiff's situation and current status").

Defendants' third and final argument in support of its Motion to Dismiss plaintiff's second claim is that plaintiff has not alleged that defendant's failure to provide her an adequate single point of contact was in any way material to the loan modification process. Defendants are correct that "a violation of § 2923.7 is actionable only when that violation is material." See Shupe v. Nationstar Mortg. LLC, 231 F. Supp. 3d 597, 603 (E.D. Cal. 2017) (England, J.). However, their argument that plaintiff fails to allege a material violation because she does not allege that "the multiple [single points of contacts] led to the denial of a loan modification to which she was entitled" (Mot. to Dismiss at 9)(emphasis in original) misstates the relevant inquiry.

In the context of the Homeowner Bill of Rights, a material violation is one where "the alleged violation affected a plaintiff's loan obligations or the modification process." Cornejo v. Ocwen Loan Servicing, LLC, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015). To allege that a violation "affected" the loan modification process, a plaintiff need not allege that he or she would have been awarded a loan modification but for the violation. In Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc., No. 2:15-CV-0255 JAM KJN, 2015 WL 4508759 (E.D. Cal. July 24, 2015), for example, the court found that the defendant's violation of Section 2924.10(a), which requires mortgage servicers to provide written acknowledgment of documents received from borrowers within five days of receipt, had "affected" the loan modification process by making it difficult for plaintiff to

determine whether her application was complete.  Id. at *3.
Here, plaintiff alleges that the alleged violation contributed to
Wells Fargo using incorrect debt-to-income and income amounts for
plaintiff's loan modification (FAC ¶ 94).  Plaintiff also alleges
that on or about November 9, 2016, she complained to the Consumer
Financial Protection Bureau about the impact of the "revolving
door" of single points of contact on her ability to navigate the
loan modification process. (FAC ¶ 21.)

Taking these facts, as alleged, in the light most
favorable to plaintiff, the non-moving party, the court finds
that plaintiff has plausibly alleged a material violation of
Section 2923.7 by defendant Wells Fargo.  Accordingly, the court
will deny defendant's Motion to Dismiss plaintiff's second claim.

### 3.   Robo-Signing

Notices of default recorded pursuant to California
Civil Code Section 2924.17 must include a "declaration that the
mortgage servicer has contacted the borrower, has tried with due
diligence to contact the borrower as required by this section, or
that no contact was required."  Cal. Civ. Code § 2923.55(c).
California Civil Code Section 2924.17 requires that such
declaration be "accurate and complete and supported by competent
and reliable evidence."  Cal. Civ. Code § 2924.17.  It also
requires that before filing a notice of default, a mortgage
servicer must "ensure that it has reviewed competent and reliable
evidence to substantiate the borrower's default and the right to
foreclose, including the borrower's loan status and loan
information."  Id.

On October 10, 2016, defendant Evelia Garcia signed a

declaration of compliance regarding Wells Fargo's due diligence with respect to plaintiff's loan. (FAC ¶ 37.) It stated that "[t]he mortgage servicer [Wells Fargo] has exercised due diligence to contact the borrower [Plaintiff] pursuant to California Civil Code §2923.55(f) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' Thirty (30) days, or more, have passed since these due diligence efforts were satisfied." (FAC Ex. L (Docket No. 10-1).) This declaration accompanied the Notice of Default Wells Fargo recorded in November, 2017. (See Id.)

Plaintiff alleges that the declaration of compliance is inaccurate and/or incomplete because Wells Fargo did not merely exercise due diligence in attempting to contact plaintiff pursuant to California Civil Code §2923.55(f), but rather, actually contacted her regarding her foreclosure avoidance options. (Id.) By recording an inaccurate declaration of compliance and using it to record a notice of default, plaintiff alleges, defendants violated California Civil Code Section 2924.17.

Missing from plaintiff's allegations is any explanation of how the alleged inaccuracy was material. She does not allege that it impacted her eligibility for loan modification or her ability to navigate the loan modification application process. "Violations of [the Homeowner Bill of Rights] are actionable only if they are "material." Asturias v. Nationstar Mortg. LLC, No. 15-CV-03861-RS, 2016 WL 1610963, at *5 (N.D. Cal. Apr. 22, 2016). See Cal. Civ. Code § 2924.12 ("After a trustee's deed upon sale has been recorded, a mortgage servicer . . . shall be liable to a

borrower for actual economic damages pursuant to Section 3281, resulting from a <u>material</u> violation of Section . . . 2924.17 by that mortgage servicer[.]") (emphasis added).  With respect to defendant Wells Fargo, plaintiff's third claim thus fails because plaintiff has alleged no facts tending to show that the alleged inaccuracy in the declaration of compliance was material.

As alleged against defendant Garcia, plaintiff's third claim fails because plaintiff has not alleged that Garcia is a "mortgage servicer" within the meaning of California Civil Code § 2920.5(a).  <u>See</u> <u>Choudhuri v. Wells Fargo Bank, N.A.</u>, No. 15-CV-03608-VC, 2017 WL 3499295, at *1 (N.D. Cal. Jan. 25, 2017) (dismissing Homeowner Bill of Rights claim against employee of mortgage servicer because the individual defendant "is not a servicer merely because she's a direct employee of the servicer."); <u>Powers v. Bank of New York Mellon</u>, No. SA-CV-171386 DOC KEWx, 2018 WL 6016972, at *15 (C.D. Cal. Sept. 19, 2018) (holding that the Homeowner Bill of Rights applies "only against mortgage services [sic], mortgage trustees, beneficiaries, or an authorized agent" and "does not apply against individual employees of a loan servicer.")

To the extent that the First Amended Complaint alleges violations of Section 2924.17 that are independent from the alleged deficiencies of the declaration of compliance, those allegations are either too vague to be plausible, or allege conduct that is better characterized as a violation of Section 2923.6.

Accordingly, the court will grant defendants' Motion to Dismiss as to plaintiff's third claim.

1    C.    Fraud

2         Under California law, "the elements of fraud are: (1) a
3    misrepresentation (false representation, concealment, or
4    nondisclosure); (2) knowledge of falsity (or scienter); (3)
5    intent to defraud, i.e., to induce reliance; (4) justifiable
6    reliance; and (5) resulting damage."  Robinson Helicopter Co. v.
7    Dana Corp., 34 Cal. 4th 979, 990 (2004).

8         Fraud claims are held to a higher pleading standard
9    than other claims; to survive a motion to dismiss, such claims
10   must "state with particularity the circumstances constituting
11   fraud or mistake."  Fed. R. Civ. P. 9(b) ("Rule 9(b)").  Under
12   Rule 9(b), "[a]verments of fraud must be accompanied by the 'who,
13   what, where, when, and how' of the misconduct charged."  Vess,
14   317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627
15   (9th Cir. 1997)).  In addition to identifying the particulars of
16   the alleged fraud, Rule 9(b) requires that a plaintiff "must 'set
17   forth what is false or misleading about a statement, and why it
18   is false.'"  Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1161
19   (9th Cir. 2009) (quoting Yourish v. Cal. Amplifier, 191 F.3d 983,
20   993 (9th Cir. 1999)).  Furthermore, plaintiff's claim for fraud
21   under California law must establish that the defendant made
22   knowingly false representations with an intent to deceive or
23   induce reliance by the plaintiff.  See Kearns v. Ford Motor Co.,
24   567 F.3d 1120, 1126 (9th Cir. 2009).

25        1.    Against Defendant Garcia

26        Plaintiff alleges that defendant Evelia Garcia engaged
27   in fraud "when she robo-signed a false Declaration of Compliance
28   on October 10, 2016, regarding the due diligence of Wells Fargo,

22

when she knew or should have known that during the time in which this declaration was filed, [p]laintiff and [d]efendants were engaged in numerous communications regarding [plaintiff's] loan modification application."  (FAC ¶ 116.)

The "who" and the "what" components of plaintiff's fraud claim are clear: plaintiff alleges Garcia declared Wells Fargo exercised due diligence in attempting to contact her pursuant to California Civil Code §2923.55(f), when in fact, it had actually made contact with her.  Absent from the complaint, however, are any particular allegations tending to show that Garcia actually knew Wells Fargo was in routine contact with plaintiff; that Garcia hoped to induce plaintiff's reliance on her representation; that plaintiff in any way relied on the alleged misrepresentation; or that the damages plaintiff alleges would not have occurred but for the alleged misrepresentation.

Thus, the First Amended Complaint's fraud claim against Garcia does not plausibly allege with particularity scienter, intent to induce reliance, or justifiable reliance.  Since these are essential elements of a claim for fraud, plaintiff has not stated a claim in fraud against defendant Evelia Garcia. Accordingly, the court will grant defendants' motion to dismiss plaintiff's fourth claim with leave to amend.

## 2.   Against Defendant Bennum

Plaintiff's seventh claim is that "[d]espite knowing that Wells Fargo could not modify [p]laintiff's loan, Bennum intentional misled and deceived [p]laintiff from April 2017 to August 2017, into believing Bennum had her best interests in mind and that he was helping her get her loan modified."  (FAC ¶ 155.)

This allegation is accompanied by generalized allegations regarding Bennum's representations to plaintiff that he was "moving forward with her loan modification application by submitting a proposed modification to [Keep Your Home California]." (FAC ¶ 152.)

The only misrepresentation made by Bennum to plaintiff that is alleged with particularity is Bennum's August 17, 2017, statement that Keep Your Home California had denied her request for assistance. (FAC ¶ 152.) Plaintiff superficially alleges that this statement was false and that Bennum knew it to be so (FAC ¶ 153), but she does not allege that Bennum intended to deceive her with that falsity; in fact, all of plaintiff's allegations concerning Bennum's intent to deceive speak to his alleged desire to string her along and keep her participating in a loan modification process he knew to be futile. (Id. ¶ 155.) This alleged intent does not explain why Bennum told her that Keep Your Home California had denied her request for assistance.

All of plaintiff's other allegations regarding Bennum's alleged misrepresentations to plaintiff fall further short of Rule 9(b)'s heightened pleading standard. Plaintiff alleges that "Bennum intentionally misled and deceived [p]laintiff from April 2017 to August 2017, into believing Bennum had her best interests in mind and that he was helping her get her loan modified." (FAC ¶ 155.) While plaintiff's identification of Bennum as the alleged fraudster is sufficiently particular, this allegation is deficient in all other regards: there are no particulars as to what Bennum said, when he said it, how he communicated it to plaintiff, or why it was false.

The First Amended Complaint's claim in fraud against defendant Bennum falls short of the heightened pleading standard established by Rule 9(b) and, accordingly, the court will grant defendants' Motion to Dismiss plaintiff's seventh claim with leave to amend.

D. <u>Negligent Misrepresentation Against Bennum</u>

The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." <u>Apollo Capital Fund, LLC v. Roth Capital Partners, LLC</u>, 158 Cal.App.4th 226, 243 (2d Dist. 2007). To succeed with a claim for negligent misrepresentation, a plaintiff must show a "causal nexus" between the alleged misrepresentation and the damage. <u>Goehring v. Chapman Univ.</u>, 121 Cal. App. 4th 353, 366 (2nd Dist. 2004).

Plaintiff's negligent misrepresentation claim fails because plaintiff does not explain how her alleged damages, <u>inter alia</u>, loss of unique residential property and fees and costs in litigation, are in anyway related to Bennum's statements about his willingness to work with plaintiff on her loan modification application. Nor does plaintiff provide any explanation for why she continued to rely on Bennum's alleged negligent representations after she learned that Wells Fargo had denied her application for a loan modification. For the foregoing reasons, plaintiff has failed to state a claim for negligent misrepresentation against defendant Bennum. Accordingly, the

court will grant defendants' Motion to Dismiss as to plaintiff's eighth cause of action with leave to amend.

E.    Negligence as to Anthony Bennum and Wells Fargo

Plaintiff's tenth and eleventh claims are for negligence against Anthony Bennum and Wells Fargo respectively.

To prevail on a negligence claim under California law, a plaintiff must show the existence of a legal duty, that that duty was breached, and that the breach was a proximate or legal cause of plaintiff's injuries. Merrill v. Navegar, Inc., 26 Cal. 4th 465 (2001). The existence and scope of a duty are legal questions for the court. Id. (citation omitted). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991)(citations omitted).

Plaintiff alleges that because defendant Sloan directed Bennum to assist plaintiff, Bennum and Wells Fargo had a duty to act with reasonable care in facilitating the receipt and disposition of her loan modification application. (FAC ¶¶ 180-81; 189-90.) Plaintiff alleges that defendants breached this duty by incompetently handling her loan modification application. (Id. ¶¶ 194, 192.) Plaintiff alleges that those breaches proximately caused her various economic damages. (Id. ¶¶ 185, 194.)

Plaintiff's negligence claims fail because neither Bennum nor Wells Fargo had a duty to act with reasonable care vis-à-vis the processing of plaintiff's loan modification

application.  Plaintiff attempts to rely on Alvarez v. BAC Home
Loan Servicing, L.P., 228 Cal. App. 4th 941 (1st Dist. 2014) to
argue that there is a "moral imperative" that loan servicers be
required to "exercise reasonable care in their dealings with
borrowers seeking a loan modification."  Id. at 949.  However,
this court has previously explained "that financial institutions
do not owe a common law duty of care to borrowers" and that the
reasoning of the California Court of Appeals in Alvarez "do[es]
not change the court's view."  Willis v. JPMorgan Chase Bank,
N.A., 250 F.Supp.3d 628, 633 (E.D. Cal. 2017)(Shubb, J.).  In
Willis, this court went on to conclude that "a loan servicer does
not owe a borrower a common law duty of care in processing a loan
modification application."  Id. at 634.

Judges in this district are split on the question of
whether or not financial institutions owe borrowers a duty of
reasonable care.  See Cortez v. Second Chance Home Loans, LLC,
No. 2:18-CV-01896 WBS EFB, 2018 WL 6216426, at *4-5 (E.D. Cal.
Nov. 28, 2018)(comparing rulings by Judges O'Neill, England, and
Burrell in which no duty of care was found with those by Judges
Ishii, Mueller, Mendez, and Nunley in which a duty of care was
found).  The undersigned, however, has consistently ruled that
lenders do not owe borrowers a duty of care in the context of the
loan modification process.  See Deschaine v. IndyMac Mortg.
Servs., No. CIV. 2:13-1991 WBS, 2013 WL 6054456 (E.D. Cal. Nov.
15, 2013), aff'd, 617 F. App'x 690 (9th Cir. 2015); Jent v. N.
Trust Corp., Civ. No. 2:13-1684 WBS CKD, 2013 WL 5806024, at *3
(E.D. Cal. Oct. 28, 2013); Bunce v. Ocwen Loan Servicing, LLC,
No. CIV. 2:13-00976 WBS, 2013 WL 3773950, at *6 (E.D. Cal. July

1  17, 2013); <u>Solomon v. Aurora Loan Servs. LLC</u>, No. CIV. 2:12-209

2  WBS, 2012 WL 2577559, at *5 (E.D. Cal. July 3, 2012); <u>Cortez</u>,

3  2018 WL 6216426.

4          Plaintiff argues that her relationship with defendants

5  Wells Fargo and Bennum is distinguished from that between a

6  typical borrower and mortgage servicer by the fact that Wells

7  Fargo CEO Timothy Sloan told her he would "look into" her loan

8  modification application and directed Bennum to become

9  plaintiff's single point of contact.  (FAC ¶¶ 180, 189).

10 Plaintiff also alleges that Bennum told plaintiff and her husband

11 that he would "help" them with the loan modification process.

12 (<u>Id.</u> ¶ 41.)  These generalized statements about "looking into"

13 plaintiff's loan modification application and "helping" her with

14 it are insufficient to establish a "special relationship" in the

15 context of a claim for negligence.  To plausibly claim that her

16 relationship with Wells Fargo or Bennum was not a conventional

17 relationship between a borrower and a lender, but rather, a

18 "special relationship" giving rise to a duty of care, plaintiff

19 would need to allege more substantial expressions of solidarity

20 and solicitations of trust by Sloan or Bennum.

21          The undersigned again reaffirms my longstanding view

22 that, absent some special relationship, in the context of a claim

23 for negligence, a lender does not owe a duty of care to

24 borrowers.  Based on the allegations in the First Amended

25 Complaint, neither Bennum nor Sloan cultivated a special

26 relationship with plaintiff that exceeded the scope of a typical

27 relationship between a borrower and a lender.  Given this,

28 plaintiff's First Amended Complaint fails to state a claim for

negligence against either Bennum or Wells Fargo.  Accordingly, the court will grant defendant's motion to dismiss plaintiff's tenth and eleventh claims with leave to amend.

F.    Promissory Estoppel

Under California law, a plaintiff alleging a promissory estoppel claim must show: (1) the existence of a promise "clear and unambiguous in its terms"; (2) "reliance by the party to whom the promise is made"; (3) that any reliance was both "reasonable and foreseeable"; and (4) that the party asserting the estoppel was injured by his reliance.  US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (quoting Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).

Plaintiff asserts a promissory estoppel claim against defendants Wells Fargo and Bennum on the grounds that she suffered injuries as a result of her reasonable reliance on various alleged promises defendants made regarding the review of plaintiff's loan modification application.  (FAC ¶¶ 200-05.) Specifically, plaintiff alleges that defendants promised her they would competently and reliably process her loan modification application and would not pursue foreclosure activities until it had received a complete application package and that Bennum would "work with plaintiff" on the application.

Plaintiff is correct that "[a] bank's alleged promise to negotiate with a borrower to reinstate and modify a loan if the borrower would forgo a bankruptcy petition is sufficiently clear and unambiguous to trigger promissory estoppel."  See Beltz v. Wells Fargo Home Mortgage, Civ. No. 2:15-1731 TLN CKD, 2017 WL 784910, at *8 (E.D. Cal. Mar. 1, 2017).  However, it does not

follow that Wells Fargo's representation that it would process plaintiff's loan modification or Bennum's statement that he would "work with" plaintiff on the application are "clear and unambiguous."  The promises plaintiff alleges are ambiguous and unclear; there is no promised outcome, and there are no required conditions.

For the foregoing reasons, plaintiff has failed to state a claim for promissory estoppel against defendant Wells Fargo or Bennum.  Accordingly, the court will grant defendants' Motion to Dismiss plaintiff's First Amended Complaint as to plaintiff's twelfth claim with leave to amend.

G.    Wrongful Foreclosure

A claim for wrongful foreclosure generally requires that:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) . . . the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

Rockridge Tr. v. Wells Fargo, N.A., 985 F.Supp.2d 1110, 1145 (N.D. Cal. 2013) (quoting Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (6th Dist. 2001)).

Plaintiff alleges that Wells Fargo wrongfully foreclosed on the subject property by virtue of its failure to comply with California Civil Code Section 2923.6 and 2923.7. (FAC ¶ 210.)  Plaintiff does not allege that she tendered the monies owed under the loan.  Defendant moves to dismiss plaintiff's wrongful foreclosure claim on the grounds that an

30

allegation of tender is required to state a claim for wrongful foreclosure. The court declines to do so since "[t]ender is required only as a prerequisite to seeking injunctive relief, which plaintiff does not seek." Ogamba v. Wells Fargo Bank, N.A., No. 2:17-CV-0175 KJM AC, 2018 WL 2842495, at *5 (E.D. Cal. June 11, 2018). See also Nguyen v. JP Morgan Chase Bank N.A., No. 12-CV-04183, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013) ("The tender element of wrongful foreclosure is an equitable concept, so the court declines to apply the tender rule at this early pleading stage without an opportunity to undertake a more informed analysis of the equities.")(internal quotations and citation omitted).

The fatal flaw in plaintiff's wrongful foreclosure claim is not that she has failed to allege tender, but rather that she has failed to plausibly allege that the foreclosure could have been avoided if defendant had complied with California Civil Code Sections 2923.6 and 2923.7. The mere fact that plaintiff has successfully stated a claim that defendant violated the Homeowner Bill of Rights does not mean that she can necessarily state a claim for wrongful foreclosure predicated on that violation. Rather, plaintiff must plausibly plead that but for defendant's violations, the foreclosure would not have occurred. See Kalnoki v. First American Tr. Servicing Solutions, LLC, 8 Cal. App. 5th 23 (3d Dist. 2017) (dismissing wrongful foreclosure claim where plaintiffs had alleged Homeowner Bill of Rights violations but "pleaded no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure

process[.]"); <u>Haynish v. Bank of Am., N.A.</u>, 284 F. Supp. 3d 1037, 1047-50 (N.D. Cal. 2018) (finding that plaintiffs had stated a claim against defendant for dual-tracking but dismissing wrongful foreclosure claim predicated on dual-tracking because plaintiffs had not alleged that the foreclosure would not have occurred but for the alleged dual-tracking). <u>Cf.</u> <u>Majd v. Bank of Am., N.A.</u>, 243 Cal. App. 4th 1293, 1307 (4th Dist. 2015), as modified (Jan. 14, 2016) (finding that alleged dual-tracking violation supported a claim for wrongful foreclosure where "plaintiff alleged prejudice in that he may have been able to avoid the foreclosure had [defendant] completed the modification review process in good faith.").

Because plaintiff fails to allege that the foreclosure would not have occurred but for defendant's allegedly illegal conduct, the court will grant defendants' Motion to Dismiss plaintiff's thirteenth claim with leave to amend.

H.  <u>Unfair Competition against Defendant Wells Fargo</u>

Plaintiff's fourteenth claim is for a violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  The UCL is "written in the disjunctive." <u>Berryman v. Merit Property Management, Inc.</u>, 152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (citation omitted).  Thus, an act violates the UCL if it is either "unlawful," "unfair" or "fraudulent." <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195, 1203 (9th Cir. 2010).

Since the court declines to dismiss plaintiff's first

and second claims -- for violation of 2923.6 and 2923.7 respectively -- defendants' argument that plaintiff's UCL claims necessarily fails because it is "dependent on claims which she does not have" (Mot. to Dismiss at 20) is unavailing.

Defendants' next argument against plaintiff's UCL claim is that plaintiff does not have standing to assert a UCL claim. A private person has standing to sue under the UCL if she can "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310, 322 (2011)(emphasis removed). To establish that the loss was the result of an unfair business practice, a plaintiff must show a "causal connection or reliance on the alleged misrepresentation." Id. at 326 (citation and internal quotation marks omitted). "A plaintiff cannot show causation if she would have suffered "the same harm whether or not a defendant complied with the law." London v. Wells Fargo Bank, N.A., No. 2:17-CV-00687 KJM AC, 2018 WL 621262, at *10 (E.D. Cal. Jan. 29, 2018) (quoting Daro v. Superior Ct., 151 Cal. App. 4th 1079, 1099 (1st Dist. 2007)).

As the court discussed in its analysis of plaintiff's wrongful foreclosure claim, plaintiff has not plausibly alleged that her injuries were proximately caused by Wells Fargo's alleged violations of the Homeowner Bill of Rights. To the contrary, the allegations in the complaint tend to show that the proximate cause of plaintiff's injuries was her inability to meet

33

her obligations under the loan.  As such, plaintiff does not have

standing to assert a claim under the UCL and the court will,

accordingly, grant defendant's Motion to Dismiss plaintiff's

fourteenth claim with leave to amend.

IT IS THEREFORE ORDERED that defendants' Motion to

Dismiss (Docket No. 14) be, and hereby is, DENIED with respect to

plaintiff's first and second claims.

IT IS FURTHER ORDERED that defendants' Motion to

Dismiss be, and hereby is, GRANTED with respect to plaintiff's

third through fourteenth claims.  The First Amended Complaint's

claims for violation of California Civil Code Section 2924.17,

fraud as to Evelia Garcia and Anthony Bennum, negligence as to

Anthony Bennum and Wells Fargo, negligent misrepresentation as to

Anthony Bennum, promissory estoppel, wrongful foreclosure, and

UCL violation are DISMISSED without prejudice.  All claims

against defendant Timothy Sloan are dismissed without prejudice

to plaintiff refiling them in state court.

Plaintiff is given thirty days from the date this Order

is filed to file an amended complaint, if she can do so

consistent with this Order.

Dated:  May 24, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE